IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAYOR & CITY COUNCIL OF BALTIMORE, *et al.* | * | |
| | * | |
| Plaintiffs, | | Civil Action No.: RDB 04-2348 |
| | * | |
| v. | * | |
| CSX TRANSPORTATION, INC., *et al.* | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OPINION</u>

This action arises out of a complaint that the Mayor and City Council of Baltimore, the Commissioner of the Baltimore City Police Department, and the Baltimore City Parking Authority (collectively, the "City") filed against CSX Transportation, Inc., a Virginia corporation ("CSX"), and Southwest Rail Industries, Inc., a Texas corporation ("SRI"). The City seeks to recover millions of dollars of damages that it suffered, allegedly as the result of unlawful conduct and negligence of CSX and SRI in connection with the derailment of a train in the Howard Street Tunnel in the City of Baltimore on July 18, 2001. Currently pending before this Court is SRI's Motion for Summary Judgment, which contends that SRI is entitled to judgment on each of the City's negligence claims against SRI as a matter of law and, in the alternative, argues that those claims are preempted by the Federal Railroad Safety Act, 49 U.S.C. § 20101-1311 (as amended and recodified) ("FRSA") and the Hazardous Materials Transportation Act, 49 U.S.C. § 5101-28 (as amended and recodified) ("HMTA"). This Court has diversity jurisdiction under 28 U.S.C. § 1332. The issues have been fully briefed and a hearing was conducted on November 17, 2005. For the reasons that follow, SRI's Motion for

Summary Judgment will be GRANTED.

BACKGROUND

This Court reviews the facts of this case in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On July 18, 2001, eleven cars from a sixty-car freight train operated by CSX derailed in the Howard Street Tunnel in the City of Baltimore.  Among the derailed cars was a railcar labeled "SRIX 30015," which was carrying tripropylene, a petroleum-based chemical.  The derailment resulted in the puncturing of SRIX 30015, which caused tripropylene to leak into the Howard Street Tunnel.  The tripropylene subsequently ignited and the resulting fire, which released toxic fumes and allegedly caused a water main to rupture, lasted five days.  (*See generally* Am. Compl.)

SRI is a privately owned transportation service company incorporated in Texas.  (Mot. for Summ. J., p. 2.)  The company consists of four officers and three employees, all of whom work in Weimer, Texas.  (*Id.*)  SRI's primary business is the leasing of railroad equipment.  (*Id.*) In this capacity, SRI acts as a "matchmaker" between owners of railroad equipment and corporations in need of railroad equipment.  (*Id.*)

On July 1, 1998, SRI entered into an Agreement with Rail Car Operators, Inc. ("Rail Car Operators").  (Mot. for Summ. J., pp. 2-3.)  This agreement obligated SRI to use its best efforts to obtain revenue with respect to certain railway equipment, including fifty railcars, owned by Rail Car Operators, Inc.  (*Id.* at pp. 2-3; Ex. 2, Art. III, ¶ 2.)  One of those cars was TEIX 30015, which was later labeled "SRIX 30015."  (*Id.* at p. 3.)

On September 1, 1998, SRI entered into Master Lease Contract No. 101 with Exxon Chemical Americas, a division of what is now the ExxonMobil Corporation ("Exxon").  (Mot.

2

for Summ. J., p. 3.)  Under this lease agreement, SRI agreed to lease five tank cars, including

SRIX 30015, to Exxon.  (*Id.* at Ex. 3.)

 In July 2001, Exxon contracted with The Kansas City Southern Railway Company to

transport SRIX 30015 from Baton Rouge, Louisiana to Bayonne, New Jersey.  (Mot. for Summ.

J., p. 5.)  After changing rail carriers a number of times, SRIX 30015 was placed on CSX

eastbound freight train L-412-16, which subsequently derailed in the Howard Street Tunnel.

(*Id.*)

 On July 16, 2004, the City of Baltimore filed a Complaint against CSX in the Circuit

Court for Baltimore City, Maryland.  On July 19, 2004, the City of Baltimore filed a First

Amended Complaint that added SRI as a defendant.  On July 22, 2004, CSX removed this action

to this Court.   On August 12, 2005, SRI filed its Motion for Summary Judgment.

LEGAL PRINCIPLES

 Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

 In undertaking this inquiry, a court must view the facts and the reasonable inferences

3

drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: § 2740 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

<u>DISCUSSION</u>

## I.    The City's Claims Against SRI.

The City's amended complaint contains seventeen counts, only three of which concern SRI:  Count XV (negligence against SRI on behalf of the City of Baltimore); Count XVI

(negligence against SRI on behalf of the Police Commissioner); and Count XVII (negligence

against SRI on behalf of the Parking Authority).  (*See* Am. Compl., ¶¶ 93-100.)

As the source of this Court's jurisdiction over this case is based on diversity of

citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require

application of the law of Maryland to questions of substantive law.  Under Maryland law, a

cause of action in negligence requires that the plaintiff show: (1) that the defendant owed a duty

to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual

injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of

the duty.  *See, e.g.*, *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994) (citations

omitted).  This Court's analysis of the City's negligence claims against SRI will be guided

accordingly.

## II.     Ownership of SRIX 30015.

The parties vigorously dispute whether SRIX 30015 is owned by SRI.  This is important

to the City's negligence analysis because the City claims that SRI's duty derives from its

ownership of the subject tank car.  (*See, e.g.*, Opp'n to Mot. for Summ. J., p. 12 ("SRI, *as the*

*owner* of [SRIX 30015], was required under the applicable federal regulations and the [Exxon

Lease] to maintain and inspect [SRIX 30015].") (emphasis added).)  *See also Erie Ins. Co. v.*

*Chops*, 585 A.2d 232, 234 (Md. 1991) ("Essential to the proof of any cause of action for

negligence is the establishment of a legally cognizable duty owed by the defendant to the

plaintiff. . ."); *Hemmings v. Pelham Wood*, 826 A.2d 443, 451 (Md. 2003) ("the existence of a

legal duty is a question of law to be decided by the court.") (quoting *Valentine v. On Target, Inc.*,

727 A.2d 947, 949 (Md. 1999)).

SRI maintains that it does not own SRIX 30015.  SRI states that its agreement with Rail

Car Operators proves that the latter owns SRIX 30015, and that its agreement with Exxon shows

that SRI is merely the lessor of this railcar.  (*See* Mot. for Summ. J., pp. 2-4.)  As lessor, SRI

contends that it owes only the narrowest duty to the City, namely "a limited duty to provide a

reasonably safe railcar to its lessee and to make reasonable efforts to ensure reasonable

inspections and maintenance of the car were completed."  (*Id*. at pp. 14-15; *see also* Hearing

Transcript, p. 101, l. 22 - p. 102, l. 5.)  SRI claims that the undisputed facts establish that this

limited duty was discharged in a diligent and responsible fashion.  (*See* Mot. for Summ. J., p. 15;

Hearing Transcript, p. 104, ll. 2-21.)

The City contends that there is sufficient evidence in the record to demonstrate that SRI

is the owner of SRIX 30015.  For example, the City notes that SRI attached the label "SRIX

30015" to the railcar at issue and emphasizes deposition testimony suggesting that this type of

label is attached only to railcars that SRI owns.  (*See* Opp'n to Mot. for Summ. J., Ex. 1, pp. 52-

53 & Ex. 2, p. 58.)  The City also places great weight on SRI's lease agreement with Exxon,

which on one occasion characterizes SRI as the owner of SRIX 30015.[1]  (*Id*. at Ex. 4, § 10.4

("[a]s owner of the Cars, [SRI] shall request . . .").)  Finally, the City suggests that SRI's post-

derailment conduct with respect to SRIX 30015—*i.e.*, SRI's request for reimbursement for the

value of SRIX 30015—is consistent with the behavior of an owner.  (*Id*.)  Based on this

---

[1]     The City relies in part on the lease agreement with Exxon to support its argument
that SRI is estopped from denying ownership because it held itself out as an owner of SRIX
30015.  (*See* Opp'n to Mot. for Summ. J., p. 11.)  This argument fails for reasons explained by
SRI (*see* Reply in Support of Mot. for Summ. J., pp. 8-9), which include the undisputed fact that
the City did not receive a copy of the lease agreement with Exxon until after this litigation
commenced and therefore could not have detrimentally relied on that document prior to the
derailment.  *See generally Reichs Ford Road Joint Venture v. State Roads Comm'n of the State
Highway Administration*, 880 A.2d 307, 321 (Md. 2005) ("Equitable estoppel is comprised of
three basic elements: (1) a voluntary representation of one party, (2) that is relied on by the other
party, (3) to the other party's detriment.")

evidence, the City argues that a reasonable factfinder could determine that SRI owned or held itself out as the owner of SRIX 30015.  (*Id.* at p. 8.)  *See*, *e.g.*, *Mayor and City Council of Baltimore v. Boitnott*, 741 A.2d 1079, 1085 n.8 (Md. 1999) (noting that an owner "is one who has dominion over the property which is the subject of ownership and the chief incidents of the ownership of property are the rights of possession, of use, of enjoyment, and of disposition.") (citing MLE, Property, § 3, p. 218).

Viewing the evidence in the light most favorable to the City, this Court finds that whether SRI owns SRIX 30015 involves genuine issues of material fact.  If credited by a jury, the facts, testimony, and documents relied on by the City could be used to decide that SRI is an owner of SRIX 30015.  Consequently, this particular issue is not appropriate for summary judgment.  *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**III.    Breach.**

SRI argues that summary judgment should be granted in its favor because there is no evidence to support the City's claim that SRI breached its duty to adequately inspect and maintain its railcars.  *See Hepburn v. Athelas Institute, Inc.*, 324 F. Supp. 2d 752, 760 (D. Md. 2004) ("In Maryland, a plaintiff cannot bring a negligence claim without identifying the breach of a duty that was owed to it, rather than another party.") (citations omitted); *see also Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994) (identifying breach as an essential element of a negligence claim).

SRI maintains that the record reveals no evidence of breach.  It notes that the City's discovery responses fail to identify any acts or omissions of SRI that would support the City's allegation of breach.  (*See* Mot. for Summ. J., Ex. 8.)  SRI also notes that the City chose not to question any witnesses about the specific breach—relating to the "braking system linkage

bar"—that was alleged in the City's amended complaint.  (*Id*. at p. 17.)  SRI also notes that the

report and deposition testimony provided by the City's expert Dr. Phani K. Raj, the only expert

who opined in detail on the relation between SRIX 30015 and the derailment, identifies no

failures of SRI to comply with any regulatory standards relating to the inspection or maintenance

of SRIX 30015.  (*Id*., p. 21; Reply in Support of Mot. for Summ. J., p. 12.)

      SRI emphasizes two conclusions offered by Dr. Raj in his expert report:

> 1.    The tank car, SRIX 30015, *per se* **did not contribute** to the derailment of the train.
>
> 2.    Almost to a degree of engineering certainty it can be said that the tank car did not have a center pin connecting the B-end truck to the car-body before the derailment incident.  The materials provided by the defendants, on the maintenance of the tank car SRIX 30015, **are not sufficient to make a determination** whether the omission to provide a centering pin was a quality control problem at the time of tank car manufacture or during any subsequent time when the car was shipped.

(Mot. for Summ. J., Ex. 11, p. 18 (emphasis added).)  SRI finds the first conclusion noteworthy

because even though the City alleged in its complaint that SRI's failure to inspect and maintain

SRIX 30015 "significantly contributed" to the derailment of the train, the City's own expert

opines that SRIX 30015 "did not contribute" to the derailment of the train.  (*Id*. at p. 21.)  The

second opinion, which focuses on whether a centering pin used in assembly to align the tank car

body to the wheel assembly was missing from one of the wheel assemblies on SRIX 30015, is

noteworthy for a similar reason: even if the City is right that a centering pin was missing at the

time of the derailment, the City's own expert opines that there is no evidence to connect that

missing centering pin to any action or inaction on SRI's part.  (*Id*.)

      The essential gravamen of the City's argument with respect to breach of a duty is that

SRI *itself* did not inspect or maintain SRIX 30015.  However, it is undisputed that inspection and

maintenance were performed on this tank car.  (*See* Mot. for Summ. J., Ex. 5; Hearing

Transcript, p. 135, ll. 5-22.)  The City acknowledges without disputing SRI's position that it paid

other companies to perform all required tasks.  (*See* Opp'n to Mot. for Summ. J., p. 15 n.10 &

Ex. 1.)  Furthermore, federal regulations did not require that SRIX 30015 be inspected until four

years after the date of the derailment, a point that the City conceded at the hearing.  *See* 49

C.F.R. § 180.509.  (*See also* Hearing Transcript, p. 119, ll. 10-19.)  Finally, the City's expert, Dr.

Raj, was unable to identify any regulatory violations in connection with SRIX 30015, or any

required inspections or maintenance of SRIX 30015 that were not completed.  (*See* Hearing

Transcript, p. 121, l. 21 - p. 122, l. 2; Mot. for Summ. J., Ex. 11.)  There is simply no genuine

issue of any material fact with respect to a breach of any duty owed by SRI to the City.

  In sum, SRI established the absence of any evidence to support the City's claim that SRI

failed to satisfy alleged statutory, regulatory, and contractual obligations to inspect and maintain

SRIX 30015.  *See*, *e.g.*, *Cray Communciations, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390,

393-94 (4th Cir. 1994) (party seeking summary judgment need not produce evidence, but must

show absence of evidence on the other side), *cert. denied*, 513 U.S. 1191 (1995).  In response,

the City failed to forecast any evidence in support of the same claim.  Accordingly, a reasonable

jury could not return a verdict for the City on any of its negligence claims against SRI, and SRI

is entitled to judgment in its favor as a matter of law on those claims.[2]  *See*, *e.g.*, Fed. R. Civ. P.

56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

---

   [2]  SRI points out that the United States Court of Appeals for the Fourth Circuit, in
an unpublished opinion, dismissed plaintiff's common-law negligence claim for injuries arising
out of a railcar accident because the plaintiff "failed to forecast any evidence" that defendants
breached a duty to plaintiff.  *See Messing v. CSX Transp., Inc.*, 172 F.3d 44 (Table), 1999 WL
14122, *2, 1999 U.S. App. LEXIS 541, *5 (4th Cir. 1999) (unpublished) (applying North
Carolina law).

**IV.     Preemption.**

Assuming *arguendo* that there were any genuine issues of material fact with respect to the City's negligence claims against SRI, this Court will address whether any such negligence claims are preempted by regulations issued under the Federal Railroad Safety Act, 49 U.S.C. § 20101-1311 (as amended and recodified) ("FRSA") and the Hazardous Materials Transportation Act, 49 U.S.C. § 5101-28 (as amended and recodified) ("HMTA").  For the reasons stated below, this Court finds that the City's common-law negligence claims against SRI are preempted by both federal regulations.

In *CSX Transp. Inc. v. Easterwood*, 507 U.S. 658, 663 (1993), the Supreme Court noted the preemption of state law when it conflicts with federal law.  In analyzing the preemption clause of the Federal Railroad Safety Act, the Court held that common law duties of railroads were within the "broad phrases" of the FRSA's preemption clause.  *Id.* at 664.  *See discussion In re Derailment Cases*, 416 F.3d 787, 793 (8th Cir. 2005).  In the *Derailment Cases*, the United States Court of Appeals for the Eighth Circuit affirmed the granting of summary judgment in favor of the defendants, a railroad and company that inspected freight cars, on certain negligence claims.  Residents of a Nebraska city brought an action against the defendants, including negligence claims, for a derailment which resulted in the release of benzene and other hazardous chemicals and the evacuation of approximately 1100 residents.  In a thorough analysis of the Supreme Court opinion in *Easterwood* and its progeny, the Eighth Circuit Court of Appeals noted that regulations issued under the FRSA established a "national railroad safety program." *Id*. at 793.  In holding that the plaintiffs' negligence inspection claims were preempted by the federal regulations, the Eighth Circuit Court of Appeals also noted that "there is no indication that the [Federal Railroad Administration] meant to leave open a state tort cause of action to

deter negligent inspection." *Id.* at 794.

As this Court has previously noted, "[p]reemption of state or local laws occurs by operation of the Supremacy Clause of the United States Constitution when (1) Congress expressly defines the extent to which federal law preempts state law; (2) state law regulates conduct in a field that Congress intended the federal government to occupy exclusively; (3) it is impossible to comply with both state and federal requirements; or (4) the state law poses an obstacle to the accomplishment and execution of congressional purposes." *Major v. CSX Transp.*, 278 F. Supp. 2d 597, 607 (D. Md. 2003) (citations omitted).[3]  In terms of this case, Congress has expressly defined the extent to which the FRSA and HMTA preempt state law.

The FRSA was enacted in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101.  The FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety . . ." 49 U.S.C. § 20103(a).  The Secretary has delegated to the Federal Railroad Administration the authority to "[c]arry out all functions vested in the Secretary by the [FRSA]," with certain exceptions not applicable here.  49 C.F.R. § 1.49(m).  The FRSA also contains an express preemption provision:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

---

[3]      The Supremacy Clause is set forth in Article VI, Clause 2 of the Constitution.  In *Major v. CSX Transp.*, this Court held that negligence claims brought under the Federal Employers Liability Act and based on design of signal systems are preempted by the Federal Railroad Safety Act. *Major v. CSX Transp.*, 278 F. Supp. 2d at 610.

49 U.S.C. § 20106.  *See generally In re Derailment Cases*, 416 F.3d 787, 793 (8th Cir. 2005).

(*See also* Hearing Transcript, p. 127, ll. 8-13 (where the City confirmed that the principle

underlying FRSA preemption is the existence of a nationwide standard for railroad safety.)  The

FRSA's preemption clause has been held to "appl[y] to the HMTA as it relates to the

transportation of hazardous materials by rail."  *CSX Transp., Inc. v. Public Utilities Com'n of*

*Ohio*, 901 F.2d 497, 501 (6th Cir. 1990), *cert. denied*, 498 U.S. 1066 (1991); *see also CSX*

*Transp. v. Williams*, 406 F.3d 667, 671 n.6 (D.C. Cir. 2005) ("FRSA preemption can apply even

though [the regulation] was expressly promulgated pursuant to the Hazardous Materials

Transportation Act, 49 U.S.C. § 5101, *et. seq.*") (citations omitted).  These cases are based in

significant part on the Supreme Court's holding in *CSX Transp., Inc. v. Easterwood*, 507 U.S.

658 (1993) that:

> [a]ccording to [the FRSA's preemption clause], applicable federal
> regulations may pre-empt any state "law, rule, regulation, order, or
> standard relating to railroad safety."  Legal duties imposed on
> railroads by the common law fall within the scope of these broad
> phrases.

*Id.* at 664.[4]  The question for this Court, then, is whether the City's claims that SRI negligently

inspected and maintained SRIX 30015 fall within the scope of regulations issued under the

FRSA and HMTA.

    As this Court noted in *Major v. CSX Transp.*, for "preemption to take effect, 'the federal

regulation must cover the same subject matter, and not merely touch upon or relate to that

---

[4]    Although the current version of the FRSA's preemption clause is worded
differently than the version that the Supreme Court examined in *Easterwood*, the two versions
are identical in substance.  *Cf. In re Derailment Cases*, 416 F.3d 787, 793 n.5 (8th Cir. 2005);
*Cearley v. Gen. Am. Trans. Corp.*, 186 F.3d 887, 890 n.5 (8th Cir. 1999); *Norfolk S. Ry. Co. v.*
*Shanklin*, 529 U.S. 344, 352-53 (2000) (applying *Easterwood*'s holding to a later version of the
FRSA's preemption clause).

subject matter.'" *Major v. CSX Transp.*, 278 F. Supp. 2d at 608 (quoting *Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 352 (2000) (internal quotations omitted)).  In this case, the City bases its negligence claims on the allegation that SRI failed to "properly and sufficiently inspect, maintain and service its railcars."  (Am.  Compl.  95.)  The City contends that "this failure by SRI was in contravention of established federal regulations that govern responsibilities with regard to maintenance of tank cars. . . "[5]  (Opp'n to Mot. for Summ. J., p. 12.)  Thus, SRI aptly notes that because HMTA regulations contained at 49 C.F.R. §§ 179-180 cover or substantially subsume the subject matter of the City's claims that SRI failed to adequately inspect and maintain its railcars, the City's negligence claims against SRI must be preempted.[6]

    In the face of the Supreme Court's opinion in *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) and its progeny, the City argues that there is no need to perform a preemption analysis under *Easterwood* because "there has been no determination, or even any contention, that SRI met its obligations under HMTA and FRSA in performing inspections and maintenance

---

[5]    The City argues in its papers that SRI's Lease with Exxon provides a duty to inspect and maintain SRIX 30015 that is independent of any obligations arising under FRSA/HMTA regulations.  (*See, e.g.*, Opp'n to Mot. for Summ. J., p. 12 ("SRI, as the owner of Railcar No. 52, was required under the applicable federal regulations *and the Lease* to maintain and inspect [SRIX 30015].") (emphasis added).)  A careful reading of the Lease agreement between SRI and Exxon, however, reveals that regulations issued under the FRSA and HMTA constitute the only source of SRI's alleged duty to inspect and maintain SRIX 30015.  The reason is that SRI's obligations under the Lease agreement are determined by reference to applicable federal regulations.  (*See* Mot. for Summ. J., Ex. 3, Art. 12 (compliance with regulations) & Ex. 2 (referencing "regulation mandated tests and inspections").)  The City conceded this point at the hearing.  (*See* Hearing Transcript, p. 132, ll, 5-21.)

[6]    The parties agree that the standard governing preemption is whether FRSA/HMTA regulations "cover" or "substantially subsume" the City's negligence claims.  (*See* Mot. for Summ. J., p. 27 ("For preemption to take effect, "the federal regulation must 'cover' the same subject matter, and not merely 'touch upon' or 'relate to' that subject matter.'") (internal citations omitted); Opp'n to Mot. for Summ. J., p. 17 ("Under an *Easterwood* analysis, Plaintiffs' claims would be preempted by HMTA and FRSA regulations if those regulations cover or 'substantially subsume' the subject matter of the relevant state law in this case.") (internal citations omitted).)

of [SRIX 30015]."  (Opp'n to Mot. for Summ. J., p. 17.)  This argument—which the City

characterizes as resting on the distinction between failing to negligently inspect and failing to

inspect at all—is unpersuasive for two reasons.  First, the City's argument rests on factual

assumptions that have no basis in the record.  For example, the City disputes neither that

inspections and maintenance were performed on SRIX 30015 nor that SRI paid other companies

to perform such inspections and maintenance.  *See generally* Section III, *supra*.  Second, even if

the City's claim is properly stated as SRI's failure to inspect at all, it remains subject to the

preemption analysis that this Court is required to perform under *Easterwood*.  That analysis turns

on whether regulations issued under the FRSA and HMTA cover or substantially subsume the

subject matter of the City's negligence claims, whether those claims are framed as failure to

negligently inspect or failure to inspect at all.

The City can only cite two opinions of one district court to support its contention that SRI

is subject to a "pre-existing and still viable common law duty" to inspect and maintain its

railcars.  (*See* Hearing Transcript, p. 122, ll. 2-9 & p. 132, ll. 19-21.)  Those cases are *Smith v.*

*Louisville & Nashville Railroad Co.*, 267 F. Supp. 716 (S.D. Ohio 1966) and *CSX Transp., Inc.*

*v. Occidental Chem. Corp.*, 130 F. Supp. 2d 936 (S.D. Ohio 2001).  Neither of these cases,

however, address preemption.  Furthermore, as the City conceded at the hearing, both cases are

subject to the Supreme Court's decision regarding "the pre-emptive effect of FRSA on

negligence suits against railroads."  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661 (1993).

(*See* Hearing Transcript, p. 133, ll. 2-12.)  As a result, the question remains whether regulations

issued under the FRSA and HMTA cover or substantially subsume the subject matter on which

the City attempts to base its negligence claims against SRI.

Regulations issued under the HMTA establish inspection and maintenance requirements

for railcars built to the same specification as SRIX 30015.  *See* 49 C.F.R. §§ 179-180.  For

example, manufacturers must certify that the railcar fully conforms to the requirements of the

relevant specification.  *See* 49 C.F.R. § 179.5.  Specific procedures are identified for repairs and

alternations.  *See* 49 C.F.R.§ 179.7.  A comprehensive quality assurance program that must have

"the means to detect any nonconformity in the manufacturing, repair, inspection, testing, and

qualification or maintenance program of the tank car" is required.  *See* 49 C.F.R. § 179.7.

Inspections are mandated if the railcar shows signs of wear or damage.  *See* 49 C.F.R. §

180.509(b).  Inspections are also required periodically during the life of the railcar.  *See* 49

C.F.R. § 180.509(c).  Finally, the types of inspections to be performed are described.  *See* 49

C.F.R. § 180.511.

 The above regulations clearly cover or substantially subsume the subject matter of the

City's claims that SRI failed to inspect and maintain SRIX 30015, including the City's claim that

SRI failed to inspect SRIX 30015 at all.  First, the regulations at 49 C.F.R. §§ 179-180

specifically limit the inspection and maintenance responsibilities that attach to railcars built to

the same specification as SRIX 30015.  As a result, these regulations establish a consistent

nationwide standard for the inspection of specific types of railcars under certain conditions.  (*See*

Hearing Transcript, p. 127, ll. 14-18 (where the City confirmed that the purpose of preempting

state law with respect to inspection standards is "not to have varying levels of sufficiency or lack

thereof of sufficient inspection from one state to another.").)  *Cf. In re Derailment Cases*, 416

F.3d 787, 793 (8th Cir. 2005) (noting that the Federal Railroad Administration has adopted

regulations that, among other requirements, mandate "inspections of freight cars at each location

where they are placed in a train.").

 Second, the City effectively concedes that regulations issued under the FRSA and HMTA

substantially subsume the subject matter of the City's specific negligence claims against SRI by repeatedly and explicitly connecting the scope of those claims to the FRSA/HMTA regulations. (*See* Opp'n to Mot. for Summ. J., p. 5 (discussing "regulation mandated tests and inspections" referenced in SRI's Lease with Exxon); p. 5 ("Federal regulations promulgated by the Secretary for the Department of Transportation also expressly prescribe duties and responsibilities that tank car facilities must perform. . ."); pp. 5-6 (discussing SRI's alleged failure to comply with HMTA regulations at 49 C.F.R. §§ 179-180); p. 12 (SRI's alleged failure to inspect and maintain "was in contravention of established federal regulations that govern responsibilities with regard to maintenance of tank cars. . ."); p. 13 ("[t]he fact that SRI admits that it did not perform its required duties under federal regulations . . ."); p. 15 ("SRI admits it did not perform inspections or maintenance of [SRIX 30015] in contravention of its Lease with Exxon and federal law."); p. 17 (noting that "there has been no determination, or even any contention, that SRI met its obligations under HMTA and FRSA in performing inspections and maintenance of [SRIX 30015].").)  Accordingly, this Court finds that the negligence claims advanced by the City against SRI on the basis of inspection and maintenance of railcars are preempted by regulations issued under the Federal Railroad Safety Act and the Hazardous Materials Transportation Act.

<u>CONCLUSION</u>

For the reasons stated above, SRI's Motion for Summary Judgment is GRANTED.  A separate Order follows.

Dated: December 14, 2005                    /s/

                                             Richard D. Bennett
                                             United States District Judge