IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAYOR & CITY COUNCIL OF BALTIMORE, *et al.* | * | |
| | * | |
| Plaintiffs, | | Civil Action No.: RDB 04-2348 |
| | * | |
| v. | | |
| | * | |
| CSX TRANSPORTATION, INC., *et al.* | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Pending before this Court is CSX Transportation, Inc.'s ("CSX" or "Defendant") Motion *In Limine* No. 1, which moves this Court to exclude from trial any evidence or argument concerning the costs of providing security at the Howard Street Tunnel after September 11, 2001 ("9/11"). The basis of CSX's motion is that the Mayor and City Council of Baltimore, the Commissioner of the Baltimore City Police Department, and the Baltimore City Parking Authority (collectively, the "City" or "Plaintiffs") cannot establish a sufficient causal connection between the derailment of a CSX train in the Howard Street Tunnel on July 18, 2001 and the security costs associated with guarding the Howard Street Tunnel after 9/11. The parties' submissions have been carefully reviewed. No hearing is necessary.[1]  *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, CSX's Motion *In Limine* No. 1 will be GRANTED.

---

[1] On November 16, 2005, the Court conducted a hearing in this matter. During that hearing, this Court granted CSX's oral motion to consider its request for partial summary judgment on a particular category of damages—*viz.*, the costs of providing security at the Howard Street Tunnel after 9/11—as a motion *in limine* and ordered additional briefing on that issue. (*See generally* Hearing Transcript, pp. 93-96.) *See also* Letter Order dated November 17, 2005.

BACKGROUND

On July 18, 2001, eleven cars from a sixty-car freight train operated by CSX derailed in the Howard Street Tunnel in the City of Baltimore. The derailment resulted in the puncturing of a railcar that was that carrying tripropylene, a petroleum-based chemical. Tripropylene leaked into the Howard Street Tunnel and was subsequently ignited. The resulting fire, which released toxic fumes and allegedly caused a water main to rupture, lasted five days. *See* Mem. Opinion, 12/14/05, pp. 2-3.

On April 5, 2002, then-Police Commissioner Edward T. Norris sent a letter to CSX that addressed the issue of security at the Howard Street Tunnel:

> Since the tragic events of September 11, 2002 [sic] the Baltimore Police Department has operated on various levels of heightened alert. While the immediate concern of a major attack has lessened, we have remained extremely vigilant, with particular attention to certain vulnerable areas within the City. One of those locations is the Howard Street tunnel used exclusively by CSX. The train derailment of July 2001, made it quite clear that any type of disruption in the tunnel would cause major problems to both the City and CSX. Therefore, this site was considered a prime location for heightened security to protect against the destructive activities of any extremist group.
>
> As a result, we felt compelled to secure both entrances to the tunnel. Unfortunately, this additional security has placed considerable strain on the City's budgeted resources. This added financial stress has been exacerbated by the slowdown in the economy, and has pushed us into a budget deficit. While we consider the security and safety of the citizens and businesses of our city to be of the utmost importance, we must look to share some of these unanticipated costs with those we protect. Therefore we are requesting that CSX help defray the costs associated with the past and ongoing security of the tunnel.

(CSX's Motion *In Limine* No. 1, Ex. D; *see also* CSX's Motion *In Limine* No. 1, Ex. E.)

The deposition testimony of Matthew Gallagher—the City's corporate designee with respect to damages pursuant to Fed. R. Civ. P. 30(b)(6)—confirms the contents of the letter sent

2

by the Baltimore Police Commissioner.  For example, Mr. Gallagher testified that, after 9/11, "[the City] evaluated infrastructure in the city to identify what [the City] perceived to be vulnerabilities and [the City] adjusted the police department deployment accordingly."  (CSX's Motion *In Limine* No. 1, Ex. A, p. 44, ll. 1-3.)  This adjusted deployment included posting a police officer at each end of the Howard Street Tunnel for 24 hours per day.  (*Id.* at p. 44, ll. 12-21.)  Although Mr. Gallagher could not state when the City began providing security at the Howard Street Tunnel, the City has since represented to this Court that security was not provided until after 9/11.  (*See* CSX's Motion *In Limine* No. 1, Ex. A, p. 42, ll. 13-18; Hearing Transcript, p. 63, l. 17-19.)[2]

## DISCUSSION

**I.     Proximate Causation.**

As this Court has previously noted, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of Maryland to questions of substantive law.  Under Maryland law, a cause of action in negligence requires that the plaintiff show: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.  (*See* Mem. Opinion, 12/14/05, p. 5 (citing *Rosenblatt v. Exxon Co.*, 642 A.2d 180, 188 (Md. 1994)).)

CSX's motion focuses on whether the loss or injury was *proximately caused* by the

---

[2]     Although fact discovery in this case closed on June 17, 2005—approximately seven months ago—the City decided to "supplement that record" by attaching the affidavits of police officers Donald Healy and John Skinner to its opposition papers.  (Opp'n to CSX's Motion In Limine No. 1, p. 4; *see also* Opp'n to CSX's Motion *In Limine* No. 1, Ex. A (Healy affidavit) & Ex. B (Skinner affidavit).)  This Court has reviewed the City's supplemental affidavits and finds that, for purposes of resolving CSX's motion, they add nothing to the record.  Accordingly, the Court will address neither the affidavits nor CSX's related objections.

3

alleged breach, which is the fourth element of a negligence action in Maryland. CSX contends that the cost of providing security at the Howard Street Tunnel after 9/11 was proximately caused by the 9/11 terrorist attacks, not any alleged breach on CSX's part. As a result, CSX argues that evidence and argument concerning post-9/11 security costs should be excluded because it is irrelevant to the City's claims under Fed. R. Evid. 402 and, in the alternative, confusing or prejudicial under Fed. R. Evid. 403.[3] (*See* CSX's Motion *In Limine* No. 1, pp. 1-2.)

Although typically submitted to the jury, proximate cause is appropriately resolved by the court "when the facts are undisputed and susceptible of but one inference . . ." (Opp'n to CSX's Motion *In Limine* No. 1, p. 10 (quoting *Campbell v. State*, 100 A.2d 798, 802 (Md. 1953)); CSX's Motion *In Limine* No. 1, p. 6.) *See also Jubb v. Ford*, 157 A.2d 422, 425 (Md. 1960) (proximate cause for jury "unless the facts are undisputed and admit of but one inference"); *Moore v. Myers*, 868 A.2d 954, 964 (Md. Ct. Spec. App. 2005) (same). In this case, the facts are not disputed.

It is well-established that proximate cause consists of two elements: (1) cause in fact, and (2) legally cognizable cause. As the Court of Special Appeals of Maryland has explained:

---

[3] The City notes in a footnote that "[a]lthough CSX frequently discusses this case as if it involved solely negligence claims, and this causation discussion draws on negligence analysis, the complaint also states claims under contract, statute, and non-negligence tort theories." (Opp'n to CSX's Motion *In Limine*, p. 6 n.2.) Neither the City nor CSX, however, make any attempt to explain how the analysis might differ for the non-negligence claims stated in the City's complaint. This Court finds that no such difference exists.

4

> *Causation in fact* raises the threshold question of "whether the defendant's conduct actually produced an injury." Maryland courts have employed two tests to determine whether cause in fact exists: the "but for" test and the "substantial factor test." . . . *Legal cause*, on the other hand, asks whether the defendant, in light of "considerations of fairness and social policy," should be held liable for the injury, even when cause in fact has been established.

*Wankel v. A & B Contractors*, 732 A.2d 333, 349 (Md. Ct. Spec. App. 1999) (emphasis added; citations omitted). Accordingly, in order to establish that the derailment proximately caused the costs associated with securing the Howard Street Tunnel after 9/11, the City must show that the derailment was both the "cause in fact" and the "legally cognizable cause" of the post-9/11 security costs.

### A.  Cause In Fact.

Causation in fact is determined in this case by the "substantial factor" test, not the "but for" test. (*See* Reply in Support of CSX's Motion *In Limine* No. 1, p. 4 ("[t]he City does not and cannot argue that it would not have incurred post-9/11 security costs 'but for' the derailment."); Opp'n to CSX's Motion *In Limine* No. 1, p. 14 (". . . the derailment and fire were a substantial factor in causing the increased security costs.).)  *See also Yonce v. SmithKline Beecham Clinical Lab's, Inc.*, 680 A.2d 569, 575-76 (Md. Ct. Spec. App. 1995) ("The 'but for' test does not resolve situations in which two independent causes concur to bring about an injury, and either cause, standing alone, would have wrought the identical harm.").

In determining whether a defendant's conduct is a substantial factor in bringing about the plaintiff's injury, Maryland courts consider three factors:

> (a)  the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b)  whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by

5

        other forces for which the actor is not responsible;

        (c)    lapse of time.

*Wankel*, 732 A.2d at 350 (citing *Yonce*, 680 A.2d at 576 (in turn quoting Restatement (Second) of Torts § 433)). Applying these factors, this Court finds that CSX's conduct was not a substantial factor in causing the City to incur post-9/11 security costs. First, the 9/11 terrorist attacks obviously had an extensive effect in producing the costs that the City now seeks to recoup. (*See* Hearing Transcript, p. 93, ll. 13-16 ("This Court is not the least bit reluctant to take judicial notice of the fact that tunnels throughout this country, bridges throughout this country, all were subjected to greater security concerns."); CSX's Motion *In Limine* No. 1, Ex. A, p. 44, ll. 1-3 (establishing that, after 9/11, "[the City] evaluated infrastructure in the city to identify what [the City] perceived to be vulnerabilities and [the City] adjusted the police department deployment accordingly.").)

    Second, in terms of posing a security risk and creating a target for extremist groups, the Howard Street Tunnel and derailment were perceived as harmless until the 9/11 terrorist attacks occurred. (*See* Hearing Transcript, p. 63, ll. 17-19 (confirming that security was not provided at the Howard Street Tunnel until after 9/11); CSX's Motion *In Limine* No. 1, Ex. D (where the Baltimore Police Commissioner states that after 9/11 "this site was considered a prime location for heightened security to protect against the destructive activities of any extremist group.").) As a result, even if the City is correct to emphasize that the derailment "exposed the vulnerability" of the Howard Street Tunnel, it simply cannot be said that CSX's conduct created a series of continuous and active forces that led to the City's decision to post officers at each end of the Howard Street Tunnel. Finally, this Court finds that the lapse in time between the derailment and the provision of additional security confirms that the derailment was not a substantial factor

in causing the City to post officers at the Howard Street Tunnel. (*See* Opp'n to CSX's Motion *In Limine* No. 1, p. 8 (acknowledging that "two months [] elapsed between the derailment and the security decision"); Hearing Transcript, p. 64, l. 20 - p. 65, l. 6 (proffering as the reason for the lapse in time that "like virtually everyone else in this country, after September 11th, people engaged in a different level of concern about assessing vulnerabilities . . .").) Based on these factors, no reasonable jury could find that CSX's conduct was a "cause in fact" of the costs of securing the Howard Street Tunnel after 9/11.

The City cannot prove causation in fact for another reason: the facts in this case do not satisfy the underlying requirements of the substantial factor test. As this Court has previously explained:

> [T]he substantial factor test for causation rather than a "but-for" test should under Maryland law be applied in a case involving multiple causes of a particular harm. However, plaintiffs miscomprehend the underlying requirements for the application of the substantial factor test in a case like this one. The critical question here is whether Goodyear's chemicals or conduct were independently *sufficient* causes of harm to the plaintiffs. A cause must be sufficient before it can be substantial. *See Restatement (Second) of Torts*, § 432(2) ("if . . . each [force] of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial contributing factor")

*Aldridge v. Goodyear Tire & Rubber Co.*, 34 F. Supp. 2d 1010, 1020 (D. Md. 1999) (emphasis in original), *rev'd on other grounds*, 223 F.3d 263 (4th Cir. 2000), *aff'd*, 30 Fed. Appx. 184, 2002 U.S. App. LEXIS 3493 (4th Cir. 2002). In this case, the City has not argued that the derailment, by itself, was sufficient to cause the City to post officers at the Howard Street Tunnel. As a result, there is no basis for applying the substantial factor test, which is appropriate only if each cause is sufficient to bring about the alleged harm. *See Aldridge*, 34 F. Supp. 2d at 1020 ("A cause must be sufficient before it can be substantial.").

The City's papers effectively concede that the derailment was individually insufficient to cause the additional security costs incurred by the City:

> [T]he Howard Street tunnel was protected after the terrorist attacks both because of the catastrophic derailment *and* because of the terrorist attacks. This "dual causation" conclusion is reasonable in light of the derailment's exposure of the tunnel as a vulnerable target and resulting increase of its vulnerability.

(Opp'n to CSX's Motion *In Limine* No. 1, p. 9 (emphasis in original).) The City's "dual causation" theory, however, is inadequate to prove causation in fact. *See Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970) ("But where plaintiff by his own evidence shows two or more equally likely causes of the injury, for only one of which defendant is responsible, plaintiff cannot recover."); *Wasserman v. Hutzler Bros. Co.*, 149 A.2d 1, 2 (Md. 1959) ("Where an injury may have been sustained as a result of several negligent acts, and the defendant is responsible for only one, the plaintiff cannot recover if the trier of facts would be required to speculate as to which of such acts of negligence actually caused the injury."); *see also Dow v. L & R Properties, Inc.*, 796 A.2d 139, 144 (Md. Ct. Spec. App. 2002) ("Circumstantial evidence may support a negligence determination if it 'amount[s] to a reasonable likelihood or probability rather than a possibility.'") (quoting *Peterson*, 264 A.2d at 855).

Although this Court's finding with respect to causation in fact renders additional analysis unnecessary, this Court will next address whether the City can establish that the derailment was the "legally cognizable cause" of the post-9/11 security costs. *See*, *e.g.*, *Yonce*, 680 A.2d at 576 ("If there is no causation in fact, we need go no further for our inquiry has reached a terminal point.").

### B. Legally Cognizable Cause.

Whether an actor's conduct is a legally cognizable cause of harm "often involves a

8

determination of whether the injury was foreseeable." *Wankel*, 732 A.2d at 349.  "[A] defendant will not be relieved from liability for an injury, if, at the time of the defendant's negligent act, the defendant should have foreseen the 'general field of danger,' not necessarily the specific kind of harm to which the injured party would be subjected as a result of the defendant's negligence." *Yonce*, 680 A.2d at 576 (citing *Stone v. Chicago Title Ins. Co.*, 624 A.2d 496, 500 (Md. 1993)). Liability may not be imposed "if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes." *Peterson*, 264 A.2d at 855.  Finally, "[t]he chain of causation may be broken by an intervening force (negligent or non-negligent) that may, in turn, become a superceding cause, in which case the original tortfeasor's liability will terminate." *Yonce*, 680 A.2d at 576.

      This Court finds that CSX's conduct was not the legally cognizable cause of the post-9/11 security costs.  First, the nature and extent of the harm was not foreseeable.  There is neither evidence nor reason to suggest that, at the time of the derailment, CSX should have foreseen that the "general field of danger" created by the derailment included "heightened vulnerability to terrorist attack." (Opp'n to CSX's Motion *In Limine* No. 1, p. 15.)  As CSX points out, the City's conduct confirms this point: if heightened vulnerability to terrorist attack was foreseeable immediately after the derailment, the City would have provided security at the Howard Street Tunnel immediately after the derailment.  It was not until after 9/11, however, that the City "evaluated infrastructure in the city to identify what [it] perceived to be vulnerabilities and [] adjusted the police department deployment accordingly."  (CSX's Motion *In Limine* No. 1, Ex. A, p. 43, l. 11 - p. 44, l. 3.)

      Second, the temporal and spatial chain between the derailment and the need to protect the Howard Street Tunnel from extremist groups is sufficiently attenuated to relieve CSX of

9

liability. On July 18, 2001, a train operated by CSX derailed in the Howard Street Tunnel in the City of Baltimore. On 9/11, terrorists crashed four commercial airliners into the World Trade Center in New York City, the Pentagon in Arlington County, Virginia, and a field in Somerset County, Pennsylvania. After 9/11, the City decided to provide security at both ends of the Howard Street Tunnel. There is simply no question that the derailment and the 9/11 attacks were completely independent of and different in kind from one another. There is also no question that the 9/11 terrorist attacks were highly extraordinary events. Accordingly, this Court finds that the costs of providing security at the Howard Street Tunnel after 9/11 were at best a highly extraordinary result of any alleged conduct on CSX's part.

Third, this Court finds that the 9/11 terrorist attacks constitute intervening and superceding causes that broke the causal chain between the derailment and the costs of providing security at the Howard Street Tunnel. Maryland courts consider six factors "in determining whether an intervening force rises to the level of a superceding cause" *Yonce*, 680 F.2d at 579. Those factors are:

> (a)  the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b)  the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
>
> (c)  the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d)  the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e)  the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

>   (f)   the degree of culpability of a wrongful act of a third person
>        which sets the intervening force in motion.

*Id*. (quoting *Restatement (Second) of Torts*, § 442).  Each of these factors weigh strongly in favor of finding that the 9/11 terrorist attacks were superceding causes in terms of causing the City to incur the costs providing security at the Howard Street Tunnel.  This Court has already noted that the 9/11 attacks were extraordinary events that operated independently of the derailment.  In addition, the 9/11 attacks obviously resulted from the wrongful and culpable acts of numerous third parties.  Finally, the specific harm that resulted from the 9/11 attacks (heightened vulnerability to terrorist attack) is different in kind from the harm that would otherwise have resulted from the derailment.

In sum, the record evidence fails to establish a sufficient causal nexus between CSX's alleged breach of a duty owed to the City and the costs of providing security at the Howard Street Tunnel after 9/11.  As a result, no reasonable jury could find that CSX proximately caused the City to incur the costs of providing security at the Howard Street Tunnel after 9/11.  Accordingly, evidence and argument concerning those costs will be excluded at trial because they are not relevant to the negligence claims alleged by the City.  *See* Fed. R. Evid. 401.

## CONCLUSION

For the reasons stated above, CSX's Motion *In Limine* No. 1 will be GRANTED.  A separate Order follows.

Dated: January 17, 2006                           /s/_____
                                                  Richard D. Bennett
                                                  United States District Judge

11